UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Sidney B. Brooks

| | |
|---|---|
| In re: ) | |
| Michael Denis Brunk, Jr., and ) | |
| Tammy Marie Brunk, ) | Case No. 11-26999-SBB |
| ) | Chapter 7 |
| Debtors, ) | |
| _____ ) | |
| ) | |
| AGL Financial Group, LLC, ) | |
| ) | |
| Plaintiff, ) | Adversary Case No. 11-01764-SBB |
| ) | |
| v. ) | |
| ) | |
| Michael Denis Brunk, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      THIS MATTER comes before the court on the Defendant's Motion for Summary Judgment filed on April 20, 2012 (Docket #22) and the Court's denial of the Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment filed on May 4, 2012 (Docket #23). In its Complaint, the Plaintiff, AGL Financial Group, LLC ("AGL"), accuses the Defendant, Michael Denis Brunk, of obtaining a refinancing of credit through false representations under 11 U.S.C. § 523(a)(2)(A) and willful and malicious injury under 11 U.S.C. § 523(a)(6).[1] The Court, having reviewed the file and being advised in the matter, makes the following findings of fact, conclusions of law, and for the reasons set forth herein, GRANTS the Defendant's Motion for Summary Judgment.

---

[1] In its Complaint, the Plaintiff vaguely identifies its first cause of action and incorrectly identifies its second cause of action. With regard to the Plaintiff's first cause of action, the Plaintiff merely cites to § 523(a)(2) and leaves it to the Court to decipher whether the Plaintiff is asserting a claim under subsection (A) or (B). Since subsections (A) and (B) identify different elements for two distinct causes of action, the pleading should identify whether a plaintiff is asserting an action under subsection (A) whereby the plaintiff *justifiably* relied on a *false representation*, or subsection (B) whereby the plaintiff *reasonably* relied on a *false financial statement*. Here, because the Plaintiffs do not allege any inaccuracies in the Defendant's financial statements and plead justifiable reliance on non-financial representations, the Court receives the Plaintiff's first cause of action as one brought under § 523(a)(2)(A). With regard to the Plaintiff's second cause of action, not only does the Plaintiff mislabel this second cause of action as a "First Cause of Action," but the Plaintiff also incorrectly identifies the cause of action as one brought under § 523(a)(2) when, according to the Plaintiff's allegations of willful and malicious conduct, it would appear to be an action brought under § 523(a)(6).

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The moving party bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[3] In applying this standard, this Court examines the factual record and reasonable inferences therefrom in light most favorable to the non-moving party.[4]

In this case, because the Defendant would not bear the burden of persuasion in the adversary proceeding, he need not negate AGL's claims, but need only point out a lack of evidence supporting an essential element of AGL's claims.[5] If the Defendant carries his initial burden, AGL, as nonmovant, must then come forward with specific facts showing that there is a genuine issue for trial.[6] To this end, AGL cannot rely on its pleadings and must offer more than trace amounts of evidence; rather, AGL must offer evidence on each element of its cause of action which would allow a reasonable trier of fact to find for AGL.[7] If AGL fails to make a sufficient showing on any element of its case, all other facts are rendered immaterial, and summary judgment is appropriate."[8]

AGL's failure to respond to the Defendant's Motion does not relieve the Defendant of his initial burden or entitle the Defendant to summary judgment in his favor; rather, the Court has a duty under Rule 56(e)(3) to review the Defendant's Motion and determine from the undisputed facts and evidence before it whether the Defendant is entitled to summary judgment as a matter of law.[9]

## II. UNDISPUTED FACTS

Since AGL has failed to properly address the facts asserted by the Defendant in his Motion for Summary Judgment as required by Rule 56(c), the Court exercises its discretion under Rule 56(e)(2) and considers the Defendant's facts asserted in his Motion as undisputed.[10]

---

[2] FED.R.CIV.P. 56(d) made applicable to adversary proceedings by FED.R.BANKR.P. 7056.

[3] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

[4] *Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

[5] *Sigmon v. Communitycare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986).

[8] *Doheny v. Wexpro Co.*, 974 F.2d 130, 133 (10th Cir. 1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986).

[9] FED.R.CIV.P. 56(e)(3) made applicable to adversary proceedings by FED.R.BANKR.P. 7056.

[10] The following undisputed facts are quoted from the Defendant's Motion for Summary Judgment, Docket #22, pgs. 2-4 with minimal and non-substantive revisions.

1. On or about March 21, 1997, the Defendant, Denis Brunk, formed a Colorado corporation called Washtime Industries, Inc. Upon formation, the company was assigned a corporate identification number of 19971044932 by the Colorado Secretary of State.[11] Hereinafter, the company will be referred to as "Washtime 1997."

2. On or about May 9, 2006, Washtime 1997 procured a commercial loan from the now defunct New Frontier Bank. The Defendant executed a personal guaranty of the loan on the same day. The original maturity date of the loan was May 2, 2007.[12]

3. On or about May 25, 2007, Washtime 1997 changed its name to "Laundry Development, Inc."[13]

4. On or about May 27, 2007, an individual named Thomas Millman formed a Colorado corporation called Washtime Industries, Inc. Upon formation, the company was assigned a corporate identification number of 20071250402 by the Colorado Secretary of State.[14] Hereinafter, the company will be referred to as "Washtime 2007." The Defendant has never been a shareholder of Washtime 2007.

5. On or about June 5, 2007, Corporation 1997 entered into a loan modification agreement with New Frontier Bank. The document was signed by Defendant, Denis Brunk. The modification documents incorrectly listed the borrower's name (by not reflecting the name change), but the loan number stayed consistent with the original loan.[15] It is not clear whether or not the Bank was informed of the corporate name change.

6. On or about June 6, 2007, Washtime 1997 entered into an agreement with Thomas Millman whereby Millman would purchase certain, but not all, assets of Washtime 1997. One of the assets purchased was Washtime 1997's former trade name, "Washtime Industries, Inc." Thomas Millman did not purchase any of the Defendant's "contracts or other liabilities or obligations of any kind", including the commercial loan from Frontier Bank.[16]

---

[11] Defendants' Motion for Summary Judgment, Docket #22, Exhibit A: Articles of Incorporation.

[12] Id at Exhibit B: Note and Guaranty.

[13] Id at Exhibit C: Amendment to Articles.

[14] Id at Exhibit D: Articles of Incorporation.

[15] Id at Exhibit E: Modification Agreement.

[16] Id at Exhibit F: Asset Purchase Agreement, pg. 2-3.

7. On or about July 5, 2007, Washtime 1997 again changed its name to "Flintrock Development, Inc."[17]

8. On or about June 20, 2008, Washtime 1997 entered into another loan modification agreement with New Frontier Bank. The modification documents incorrectly listed the borrower's name (by not reflecting the name change), but the loan number stayed consistent with the original loan.[18]

9. On or about August 28, 2008, Washtime 1997 entered into another loan modification agreement with New Frontier Bank. The modification documents incorrectly listed the borrower's name (by not reflecting the name change), but the loan number stayed consistent with the original loan. At this time, Washtime 1997 executed a security agreement to collateralize the loan. The document incorrectly lists the borrower's name (by not reflecting the name change), but the loan number stayed consistent with the original loan.[19]

10. The security agreement does not contain any statements regarding what property Washtime 1997 owns; rather, the documents simply take a security interest in whatever the company may in fact own.[20]

11. On or about September 3, 2008, New Frontier Bank filed a UCC-1 financing statement with the Colorado Secretary of State in order to perfect its security interest in the collateralized loan. The UCC-1 financing statement correctly lists Washtime 1997's corporate identification number as 19971044932.[21]

12. At some point between August 27, 2008 and October 2, 2009, New Frontier Bank was closed down and was liquidated by the Federal Deposit Insurance Corporation. The interest in the loan to Washtime 1997 was sold to a company known as RG Financial, LLC.

13. On or about October 2, 2009, Washtime 1997 entered into an agreement with RG Financial, LLC to modify the terms of the note in question.[22]

14. Some time later, the Plaintiff decided to purchase the loan in question from RG Financial, LLC.

---

[17] Id at Exhibit G: Amendment to Articles.

[18] Id at Exhibit H: Loan Modification Documents.

[19] Id at Exhibit I: Modification and Security Documents.

[20] Id.

[21] Id at Exhibit J: UCC-1 Documents.

[22] Id at Exhibit K: Loan Modification and Extension Agreement.

15. From the time the loan was originated by New Frontier Bank, the Defendant and/or Washtime 1997 made regular payments the loan while held by New Frontier and also with the loan's subsequent purchasers. That is, Washtime 1997 continually made payments on the subject loan from origination through the many modifications referenced above, despite any clerical errors as to Washtime 1997's name made by New Frontier Bank and its successors.[23]

## III. DISCUSSION

In its Complaint, the Plaintiff, AGL, pleads two causes of action: (1) a claim for nondischargeability for false representations under 11 U.S.C. § 523(a)(2)(A) and (2) a claim for willful and malicious injury under 11 U.S.C. § 523(a)(6). Claims brought under § 523 to except debts from discharge are strictly construed against creditors and liberally construed in favor of debtors in bankruptcy.[24]

### A. Claim for Nondischargeability for False Representations Pursuant to 11 U.S.C. §523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt will not be discharged in bankruptcy if it is –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][25]

To establish a nondischargeable claim under § 523(a)(2)(A), AGL must establish by a preponderance of the evidence that: (1) the Defendant made a material false representation,[26] (2) with the intent to deceive AGL, (3) AGL relied on the false representation, (4) AGL's reliance was justifiable, (5) and the Defendant's false representation caused AGL to sustain a loss.[27]

Applying this standard, the Court finds that, while the Defendant did misrepresent the name of his corporation on multiple occasions, AGL has failed to clear its evidentiary hurdle

---

[23] Id at Exhibit L: Loan Payment Summary.

[24] *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002); *see also Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997).

[25] 11 U.S.C. § 523(a)(2)(A).

[26] *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 443 (1995).

[27] *Field v. Mans*, 516 U.S. 59 (1995); *In re Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009). With regard to the element of reliance in fact, AGL need not show that the Defendant made the alleged false representation to AGL or that AGL relied upon the alleged false representation; rather, as the ultimate assignee of the debt, AGL steps into the shoes of the assignor and acquires the rights of the assignor. Thus, AGL need only show that the alleged false representation is one upon which the assignor relied and that the assignor's reliance, if any, was justified. See *In re Boyajian*, 367 B.R. 138 (9th Cir. BAP 2007).

with regard to the second, third, fourth, and fifth elements of its claim under §523(a)(2)(A) because AGL has supplied only trace amounts of evidence, if any, to support these elements, namely, the Defendant's intent to deceive, AGL's reliance on the representations (in fact or justifiably), and causation between the Defendant's representation and AGL's loss.

### i.  *Intent to Deceive*

With regard to the Defendant's intent, intent to deceive may be inferred from the totality of the circumstances.[28] AGL alleges that the Defendant misrepresented his authority to act on behalf of Washtime 2007 after the Defendant sold the trade name "Washtime" to Thomas Millman on June 6, 2007 and points to multiple loan related documents which the Defendant signed as Vice President of Washtime after June 6, 2007. While the Defendant did sign loan modification documents purporting to represent "Washtime", AGL offers no evidence to support an inference that the Defendant intended to represent Washtime 2007 as opposed to Washtime 1997. In fact, the preponderance of available evidence suggests the opposite inference – the Defendant was, at all times, representing Washtime 1997, and thus, lacked the requisite deceptive intent.

The Defendant obtained the loan from New Frontier Bank in 2006 when he still owned the "Washtime" trade name. Although the Defendant sold the "Washtime" trade name to Thomas Millman in 2007, the Defendant did not sell or assign the loan from New Frontier Bank to Thomas Millman. Therefore, it is undeniable that the Defendant had the authority to modify the loan his company entered into and that the Defendant personally guaranteed. Therefore, the next question is whether the Defendant intentionally misrepresented the assets of Washtime 1997 in order to secure loan modifications. Again, the preponderance of the evidence shows a lack of fraudulent intent.

For example, during the Defendant's third loan modification on August 27, 2008, the Defendant provided financial statements from Washtime 1997, not Washtime 2007. In addition, the Defendant provided New Frontier Bank with Washtime 1997's corporate identification number, 19971044932, which New Frontier Bank included in its UCC-1 financing statement it filed with the Colorado Secretary of State in order to perfect its interest in Washtime 1997's collateral, which includes "ALL EQUIPMENT, ACCOUNTS RECEIVABLE AND GENERAL INTANGIBLES, NOW OWNED OR HEREAFTER ACQUIRED, WHEREVER LOCATED AND PROCEEDS THEREOF." Significantly, this description does not include any assets unique to Washtime 2007 nor does the description include any assets which were not owned by Washtime 1997.

While the Defendant purported to represent "Washtime" when executing loan and refinancing related documents, the preponderance of the evidence shows that the Defendant was representing his current company, albeit under its former name, but importantly, the Defendant was representing the company which was obligated to repay the loan and not, as alleged by AGL, Washtime 2007. Thus, the available facts prevent AGL from proving deceptive intent and, liberally construing AGL's claim in favor of the Defendant, the Court concludes that the Defendant lacked the deceptive intent necessary to support AGL's claim under § 523(a)(2)(A). As a consequence, AGL's claim fails as a matter of law.

---

[28]  *In re Riebesell*, 586 F.3d 782, 791 (10th Cir. 2009).

      *ii.*      *Reliance*

Even if AGL had offered facts sufficient to carry its evidentiary burden related to the Defendant's deceptive intent, AGL has not shown that it or any previous lender to the Defendant actually, let alone justifiably, relied on the Defendant's representation that the Defendant's company was still named "Washtime." In fact, significant evidence to the contrary exists which shows that lending and loan modification decisions were based on outdated financial statements from Washtime 1997 and financial statements regarding the Defendant's personal net worth.

For example, prior to approving the Defendant's application for a third modification on August 27, 2008, New Frontier Bank drafted a report for its loan committee which contains a thorough analysis Washtime 1997's financial statements, including balance sheets and profit and loss statements.[29] The analysis includes calculations of Washtime 1997's three year average debt coverage ratio, three year average debt/asset ratio, as well as summaries of Washtime 1997's yearly cash flow. In addition, the report contains an analysis of the Defendant's personal assets and liabilities, a calculation of the Defendant's personal net worth, a summary of the Defendant's existing deposit accounts, and the Defendant's credit score. In addition, the report contains plans for the loan to be secured by Washtime 1997's available assets and the personal guarantee of the Defendant.

After evaluating the financial state of Washtime 1997 and the Defendant, New Frontier Bank concluded that the insufficient net worth of Washtime 1997 is "offset by the personal net worth of the [Defendant] guarantor."[30] New Frontier Bank went on to state, "The [Defendant] had several loans with the bank that have [been] paid off and the current loans are paid as agreed. The [Defendant has] always worked well with the bank and [has] always done what has been asked of [him]."[31]

Noticeably absent from this 19 page report is any mention of New Frontier Bank's reliance on the name of the Defendant's corporation. Such evidence of reliance could have come in the form of statements regarding Washtime's brand recognition or customer goodwill; however, such statements are not included in New Frontier Bank's report. What is included in New Frontier Bank's report evidences a heavy reliance on Washtime 1997's finances, the personal finances of the Defendant, guarantees made by Washtime 1997 and the Defendant, and the Bank's past relationship with the Defendant. Indeed, the great weight of evidence suggests that the Bank relied upon the name and reputation of the Defendant rather than the name of his company. Thus, the preponderance of the evidence shows that the name of the Defendant's company was inconsequential to the Bank's decision to modify the Defendant's loan. Therefore, AGL has failed to support the third and fourth elements of its claim and the Defendant is entitled to judgment as a matter of law.

---

[29]     Defendants' Motion for Summary Judgment, Docket #22, Exhibit M: New Frontier Bank Credit Presentation and Committee Approval.

[30]     Id at pg. 3.

[31]     Defendants' Motion for Summary Judgment, Docket #22, Exhibit M: New Frontier Bank Credit Presentation and Committee Approval, pg. 7.


     *iii.*  *Causation*

  Because the Court finds that the name of the Defendant's corporation played no role in any lender's decision to lend money or modify loans, there no basis for concluding that the loss suffered by AGL was the result of the Defendant's misrepresentation.

  Again, the Court finds that, while the Defendant did misrepresent the name of his corporation on multiple occasions, AGL has failed to clear its evidentiary hurdle with regard to the second, third, fourth, and fifth elements of its claim under §523(a)(2)(A). Conversely, the Defendant has offered undisputed facts which entitle him to judgment as a matter of law with regard to this claim.

  **B.**  **Claim for Nondischargeability for Willful and Malicious Injury Pursuant to 11 U.S.C. §523(a)(6)**

  Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity[.]"[32] To support a claim for willful and malicious injury, the plaintiff must show that "the actor intend[ed] the consequences of an act, not simply the act itself."[33] Because the Court has already found that the Defendant did not intend to misrepresent the name of his corporation, not to mention that the misrepresentation played no role AGL's eventual loss, the Court concludes the Defendant did not intend any harmful consequences from his misrepresentation.

## IV. CONCLUSION AND ORDER

  IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment is GRANTED and this adversary proceeding is DISMISSED. The Clerk of the Court can close this adversary proceeding fourteen (14) days after this Order becomes final and non-appealable.

Dated this 21st day of June, 2012.

                BY THE COURT:

                *[signature]*
                _____

                Sidney B. Brooks,
                United States Bankruptcy Judge

---

[32]  11 U.S.C. § 523(a)(6).

[33]  *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974 (1998).